# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Gary Thelen,** | Civil No. 08-1150 (JNE/JJG) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| **City of Elba, et al.,** | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter returned to the undersigned on January 26, 2010 on the defendants' motion for summary judgment (Doc. No. 65). Plaintiff Gary Thelen did not appear. Pierre N. Regnier, Esq., appeared on behalf of defendants City of Alba, Betty Jo Rico, Wayne Elhenfeldt, Scott Scherbring, Scott Jensen, and Rebecca Prebe. The motion is referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636(b) and Local Rule 72.1(b).

To briefly review, plaintiff Gary Thelen has a longstanding property dispute with the City of Elba and various City officials. Gary and his brother, Thomas Thelen, originally commenced this action against the City and five other defendants: Scott Jensen and Scott Scherbring, current city council members; Rebecca Prebe, former mayor; Betty Jo Rico, former city clerk; and Wayne Mehrkens, former city attorney.

Wayne Mehrkens successfully moved for his dismissal from this action near the outset of this litigation. Thomas Thelen voluntarily stipulated to his dismissal from this action, and under this stipulation, he was dismissed by an order on November 4, 2009. As a result, Gary Thelen is the sole plaintiff, and there are five remaining defendants. Because the same counsel represents

all five, their interests are apparently identical for the purposes of this litigation, and this report refers to them collectively as the City defendants.

On December 11, 2009, the City defendants brought their current motion for summary judgment. By this motion, they seek dismissal of all remaining claims in this litigation. Gary Thelen has not timely responded to this motion, did not appear at the motion hearing, and has not done anything else to prosecute this litigation since the City defendants filed their motion. For these reasons, the City defendants' motion is unopposed, and the record generally consists of the affidavits they have submitted in support of their motion.

**I.     BACKGROUND**

Aside from the fact that the disputed property is located within the City, the record offers few details regarding the property itself. For instance, its address may originally have been 120 or 140 Rolling Oak Road, but at some point thereafter, it may have been renumbered to 1120 or 1140 Rolling Oak Road. (Exh. 1 at 1, 16; Exh. 2 at 3.)[1]

Thomas Thelen apparently acquired this property from Jack Graves in 1997. At the time of the transaction, they did not survey the property and were unaware of its precise boundaries. But Thomas evidently received title to the property, and in current county property tax records, he remains owner of record to property at 140 Rolling Oak Road. (Exh. 2 at 31-32; Exh. 3; Exh. 4 at 4.)

At some point after Thomas Thelen acquired the property, Gary Thelen started to use or occupy it. Thomas intended to sell the property to Gary, and they agree that Gary has already paid Thomas for the property. Due to problems establishing its boundaries, however, they could not clear title and consummate the transaction. Even so, the record clearly shows that Thomas

---

[1]     Exhibits are cited in an appendix at the end of this report and recommendation.

granted Gary the right to use the property. One state court informally observed, furthermore, that Gary had received a beneficial interest in the property. (Exh. 2 at 31-33; Exh. 4 at 4; Exh. 5 at 14-15.)

The relevant events in this litigation are traceable to a city council meeting on September 8, 1997, at which Gary Thelen applied for a building permit for the property. He claims that the permit was approved but that the city clerk at the time, defendant Betty Jo Rico, did not have the "permit book" and was unable to issue the document. Because Rico is an adjoining landowner, Gary Thelen contends that Rico withheld the permit to defend her own property interests. (*See* Exh. 1 at 3; Exh. 2 at 63-65.)

When Gary Thelen subsequently asked for the permit, he contends, he found that several city officials now objected. According to Gary, both the mayor and the city attorney at the time, Timothy Murphy and Wayne Mehrkens respectively, insisted that Gary survey the property first. Gary claims that he attended more city council meetings in an effort to resolve these concerns, to no avail. (Exh. 1 at 3; Exh. 2 at 13, 66-67.) The record has no minutes, or any other written documentation, of these city council meetings or the proceedings on this building permit.

Notwithstanding these concerns, Gary Thelen placed a house on a preexisting foundation at the property. The record does not indicate when the building was completed, but it appears the work was done around August 1998. Gary may have built at least one more structure in the area. (Exh. 2 at 12, 16; Exh. 4 at 5.)

At some point thereafter, both Rico and Gary Thelen obtained surveys of the area, and the surveys suggested that the house was over a boundary with two adjoining properties. These issues led to two lawsuits, commenced by Rico and others, in a Minnesota state district court in 1998 and 2000. (Exh. 6.)

Through an order on March 5, 2006, the state district court found in material part that the house was located on the boundary, but did not grant any particular relief at that time. (Exh. 4 at 5, 7.) In November 2006, through a pleading signed by city attorney Wayne Mehrkens, the City purportedly intervened in the litigation. It asked that Thomas Thelen be compelled to move the house at least twenty-five feet away from the boundary, pursuant to setbacks required under City Ordinance 101, a zoning ordinance. (*See* Exhs. 7, 8, 9.)

When Mehrkens billed the City for this work, a question arose about whether the City had ever authorized Mehrkens to engage in the boundary litigation. The record offers conflicting evidence on this matter. But in any event, the City withdrew its motion for summary judgment on February 23, 2007, and apparently did not participate further in the litigation. (*See* Exhs. 9, 10, 11.)

Notwithstanding the withdrawal, the state district court nevertheless enforced the zoning ordinance. Through an order on May 6, 2007, the court evidently required the Thelens to move the house, under a lawfully issued permit and consistent with the setback requirements, by June 1, 2007. (*See* Exh. 1 at 12-13; Exh. 12.)

To comply with the May 6 order, Gary Thelen commenced efforts to obtain a permit to move the house. According to Gary, he initially applied for a permit at a city council meeting on May 14, 2007, but Rico allegedly opposed the application and it was denied. He also applied at the next meeting on June 13, 2007, but city officials demanded that he complete a topological survey of the property. (Exh. 1 at 14, 17-18, 21; Exh. 2 at 61.)

The defendants' actions at the May 14 and June 13 city council meetings appear to be the focus of the claims Gary Thelen advances in his complaint. He contends that city officials had no cause to deny him a permit. And at both meetings, he alleges, he presented surveys and other

4

evidence to show he was entitled to a permit. But once again, the record lacks any substantiating documentation: there are no minutes of the meetings, nor are there applications for the permit or evidence supporting those applications.

Regardless of the permitting impasse, the house was not moved. For reasons not evident in the record here, the state district court reconsidered its prior rulings in an order on November 8, 2007. It determined that Rico, in her capacity as city clerk, had an apparent conflict of interest with Gary Thelen. As a result, the court invoked the unclean hands doctrine, holding that Rico could not obtain equitable relief. The court accordingly suspended its prior order requiring that the house be moved. (Exh. 13.)

The record reveals one other significant dispute about the property.[2] Through a letter on July 17, 2007, Rico—in her capacity as city clerk—directed Thelen to stop operating a primitive campground there because the property had been designated as a floodplain. (Exh. 14.) Aside from this letter, the record lacks further information about this dispute.

Gary Thelen commenced the current litigation in April 2008. At this time, his remaining claims are for violations of equal protection under the U.S. and Minnesota Constitutions, as well as common-law claims for negligence, breach of contract, and intentional infliction of emotional distress.

Pursuant the equal protection claims, Gary Thelen frequently alleges that other, similarly situated landowners received more favorable treatment from city officials. These landowners include the Ricos, neighboring landowners, and those with floodplain property. Gary alleges that

---

[2] In his complaint, Gary Thelen alludes to another dispute with city officials. He contends that city officials rejected his application to place a mobile home on certain property elsewhere. (Exh. 1 at 25.) Because the record offers no meaningful information about this dispute, it does not merit further consideration here.

5

city officials summarily granted permits without supporting documentation, or alternatively, did not require those landowners to obtain permits at all.

The only evidence about these matters, however, consists of statements Gary Thelen made at his deposition. (Exh. 2 at 17, 51, 53, 61, 63-75; *see also* Exh. 5 at 39-40, 43-44.) The record has no documentation of what permits were granted to other landowners, or the basis for issuance of their permits. Nor is there proof that particular landowners used or improved their properties without the proper permits.

## II.  DISCUSSION

### A.  Standard of Review

The City defendants now move for summary judgment against the remaining claims. To obtain summary judgment, the moving party must show that there are no issues of material fact and that it is entitled to a judgment as a matter of law. *DG&G, Inc. v. Flexsol Packaging Corp.*, 576 F.3d 820, 823 (8th Cir. 2009). For an issue of material fact to be present, there must be sufficient evidence for a reasonable juror to return a verdict for the nonmoving party. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

Under this standard, all reasonable inferences are taken in favor of the nonmoving party. *Singletary v. Missouri Dep't of Corrections*, 423 F.3d 886, 890 (8th Cir. 2005). But when taking reasonable inferences, a court need not accept self-serving allegations from the nonmoving party. The nonmoving party instead must cite sufficient, relevant evidence that permits a verdict in its favor. *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (quotation omitted).

### B.  Standing; Real Party in Interest

The City defendants raise some threshold arguments regarding Gary Thelen's authority to prosecute this lawsuit. They contend that Gary has not suffered a cognizable injury sufficient to

establish constitutional standing, or in the alternative, that he is not a real party in interest for the purposes of Rule 17(a).

As the City defendants have correctly observed, the doctrine of constitutional standing is derived from Article III of the U.S. Constitution, which limits federal courts to hearing "cases" and "controversies." A plaintiff has standing where it suffers an actual injury, traceable to the conduct of the defendant, which can be redressed by a favorable court decision. *Public Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005).

When concerns about standing are present, a court must be satisfied that the plaintiff has a personal stake in the outcome of the controversy. *Gray v. City of Valley Park*, 567 F.3d 976, 983 (8th Cir. 2009). Although a plaintiff ordinarily must show an injury to its own legal rights or interests, a plaintiff may sometimes have standing to assert relief on behalf of others, especially where that plaintiff shares common interests with others. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591-92 (8th Cir. 2009).

Taking reasonable inferences in Gary Thelen's favor, the record shows that his brother Thomas gave him permission to use the property. And it was Gary, not Thomas, who engaged in efforts to obtain permits and make improvements to the property. Even without formal transfer of title, Gary plainly enjoyed certain rights with respect to the property.

As a result, when city officials purportedly refused permits and took other adverse actions involving the property, Gary Thelen suffered a cognizable injury that could be redressed by a favorable judicial decision. This Court finds that there is reasonable evidence of constitutional standing here, which precludes summary judgment for this reason.

The City defendants also advance what might be called a procedural standing argument. Rule 17(a)(1) states in material part, "An action must be prosecuted in the name of the real party

in interest." But this rule acknowledges several exceptions, which include action on behalf of a "bailee" and "a party with whom or in whom a contract has been made for another's benefit."

There is reason to conclude that Gary is a real party in interest here. Even if he does not have formal title, the record shows that Gary was chiefly responsible for managing the property, which permits the inference that Thomas entrusted the property to Gary. And the record further indicates that, once the boundary dispute is resolved, Thomas will finalize sale of the property to Gary. When reasonable inferences are taken from this record, Gary may be deemed a real party in interest, and thus summary judgment need not be granted on this basis either.

B. **Equal Protection**

The discussion now turns to the merits of specific claims. Regarding the equal protection claims, the City defendants contend that there is no evidence Gary Thelen was treated differently from other similarly situated landowners; that he was the subject of intentional discrimination by the City defendants; or that he received differential treatment without a rational basis. Put more simply, the City defendants generally argue that there has been a failure of proof.

Previously in this matter, through a report and recommendation on January 7, 2009, this Court discussed what is required to show a violation of equal protection. Where the purported violation does not involve a protected class or a fundamental right, a plaintiff must establish that he or she purposefully received different treatment from other similarly situated persons, and that this treatment lacked a rational basis. *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006); *Brandt v. Davis*, 191 F.3d 887, 893 (8th Cir. 1999).

If the purported violation is founded on discriminatory application of zoning or land use regulations, then to avoid summary judgment, the nonmoving party must show that it was treated differently from other similarly situated landowners. *See, e.g., Barstad v. Murray County*, 420

F.3d 880, 884 (8th Cir. 2005) (upholding summary judgment where plaintiff did not show that city officials denied variances to other similarly situated land developers).

Because Gary Thelen has not opposed summary judgment here, he has not offered proof that the City defendants treated other similarly situated landowners differently. And even when the rest of the record is examined with inferences in his favor, there is no reasonable evidence of such differential treatment. The only evidence, regarding the City defendants' treatment of other landowners, are statements Gary made in his deposition. By themselves, these statements are not enough to avoid summary judgment.

The same reasoning is equally applicable to the question of whether the City defendants intentionally engaged in discriminatory conduct. To establish a violation of equal protection, the nonmoving party must offer some evidence that discrimination was intentional and purposeful. *Wilson v. Northcutt*, 441 F.3d 586, 590-91 (8th Cir. 2006) (ruling that, where city officials built a drainage ditch but there was no evidence it was intended to harm plaintiff, there was no proof of discriminatory conduct); *Martin v. City of Brentwood*, 200 F.3d 1205, 1206 (8th Cir. 2000) (per curiam) (holding that where city officials denied a liquor license, and there was no evidence that those officials treated this application differently from others, summary judgment was proper).

With the possible exception of Rico, the record lacks evidence that any City defendants engaged in purposeful or intentional discrimination against Gary Thelen. Once again, the only evidence on this point consists of his deposition testimony, and these statements are not enough to avoid summary judgment. Because proof of intentional discrimination is lacking, summary judgment is also appropriate for this reason.[3]

---

[3] As this Court observed in the January 7 report, this outcome controls the equal protection claims under both the U.S. and Minnesota Constitutions. *See, e.g., Scott v. Minneapolis Police*

## C. Tort Immunities

Against the tort claims for negligence and intentional infliction of emotional distress, the City defendants argue in part that the claims are foreclosed by certain tort immunities. The City itself chiefly asserts statutory immunity under Minn. Stat. § 466.03; the individual defendants claim common-law official immunity.

### 1. Statutory Immunity

Under the Minnesota Tort Claims Act, municipalities are ordinarily liable for the torts of their agents. But there are exceptions, including claims "based on the performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, subds. 1, 6; *Conlin v. City of St. Paul*, 605 N.W.2d 396, 400 (Minn. 2000); *Fear v. Indep. Sch. Dist. No. 911*, 634 N.W.2d 204, 210 (Minn. App. 2001). As this exception depends upon whether there is a discretionary function, older authorities sometimes call this discretionary immunity. *See, e.g., Angell v. Hennepin County Regional Rail Authority*, 578 N.W.2d 343, 345 n. 2 (Minn. 1998).

To determine whether a function is discretionary, courts typically examine whether that function is a planning-level function or a day-to-day operational function. If a function calls for evaluation of social, political, or economic concerns, it is a planning-level function. But where it involves day-to-day operations of government, the application of technical skills, or the exercise of professional judgment, the function is operational and statutory immunity is not available. *Schroeder v. St. Louis County*, 708 N.W.2d 497, 504 (Minn. 2006).

Minnesota courts have repeatedly ruled that, when a municipality makes decisions about land use permits, the municipality is performing a discretionary function and statutory immunity

---

*Relief Ass'n, Inc.*, 615 N.W.2d 66, 74 (Minn. 2000); *In re Estate of Turner*, 391 N.W.2d 767, 770 n. 2 (Minn. 1986).

attaches.[4] *See, e.g., Wilson v. Ramacher*, 352 N.W.2d 389, 393 (Minn. 1984); *Vrieze v. New Century Homes, Inc.*, 542 N.W.2d 62, 65 (Minn. App. 1996); *Masonick v. J.P. Homes, Inc.*, 494 N.W.2d 910, 912 (Minn. App. 1993).

Taking all reasonable inferences from the record, the tort liability of the City is entirely founded on its purported actions in connection with the building permits. Because these actions are discretionary, statutory immunity applies and the City is immune from tort liability here.

### 2. Official Immunity

Statutory immunity does not extend, however, to individual torts by municipal officials. These officials are instead shielded by the common-law doctrine of official immunity. Similar to statutory immunity, the availability of this immunity depends on whether a particular function is discretionary. But this standard is applied differently in the context of official immunity, which takes a more expansive view of what functions are discretionary. *Rico v. State*, 472 N.W.2d 100, 106-07 & n. 4 (Minn. 1991).

Under the controlling standard here, courts consider whether a function is discretionary or ministerial. Where a function requires the official to exercise judgment or discretion, it is discretionary and the immunity applies. But if a function involves execution of a specific duty arising from particular facts, it is ministerial and the immunity does not apply. Where a function is discretionary, a plaintiff may overcome official immunity by showing malice, meaning that the official willfully engaged in wrongdoing without justification or excuse. *See, e.g., Schroeder v. St. Louis County*, 708 N.W.2d 497, 505-06 (Minn. 2006); *J.W. ex rel. B.R.W. v. 287 Intermediate Sch. Dist.*, 761 N.W.2d 896, 901 (Minn. App. 2009).

---

[4] This principle has one narrow exception. Where the approval of a permit clearly violates controlling law, the municipality may still be liable incident to its decision to approve the permit. *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 786 (Minn. 1989). There being no reasonable evidence that Gary Thelen received a permit, this exception cannot apply here.

Few published decisions have considered whether municipal land use decisions should receive official immunity. But those cases generally recognize that, because land use decisions involve judgment and discretion, official immunity should attach. *See Mohler v. City of St. Louis Park*, 643 N.W.2d 623, 629 (Minn. App. 2002) (dictum) (noting that the enforcement of a city building ordinance involved the exercise of discretion); *McDonough v. City of Rosemount*, 503 N.W.2d 493, 498 (Minn. App. 1993) (ruling that city officials' decision whether to rent property from landowner was discretionary).

And as this Court observed earlier, discretion is interpreted more broadly in the context of official immunity than for statutory immunity. *See Rico*, 472 N.W.2d at 107. Consistent with the prior analysis of statutory immunity, this Court further finds that the individual defendants were engaged in discretionary land use decisions, and so they are shielded by official immunity. Because Gary Thelen has not opposed summary judgment, moreover, he has not presented any evidence of malice that might overcome official immunity.

If the individual defendants receive official immunity, the City further argues, it should also be granted vicarious official immunity. This position has merit. If the agents or employees of a municipality receive official immunity, the municipality is vicariously immune from liability for their conduct. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998). So in addition to statutory immunity, the City may claim vicarious official immunity here.

### D. Negligence; Public Duty Doctrine

With their tort immunity arguments, the City defendants also raise specific challenges to the tort claims themselves. For instance, the City defendants contend that the negligence claim fails because, under the public duty doctrine, they owe no individual duty of care to Gary Thelen.

To demonstrate a claim for negligence, a plaintiff generally must show that the defendant owed the plaintiff a duty of reasonable care; that the defendant breached that duty; and that the breach caused the plaintiff to suffer damages. *See, e.g., Foss v. Kincade*, 766 N.W.2d 317, 320 (Minn. 2009). The public duty doctrine provides that, for the purposes of a negligence action, a municipality cannot be liable for the breach of duties it owes to the public as a whole. *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 803-04 (Minn. 1979).

When a municipality enforces its ordinances, through licensing or inspection, the purpose of such enforcement is to protect the general public. These activities fall within the public duty doctrine, and therefore, will not support a claim for negligence against the municipality. *See, e.g., Klingner v. City of Braham*, 130 F.Supp.2d 1068, 1072-73 (D.Minn. 2001) (liquor license); *Cracraft*, 279 N.W.2d at 808 (fire inspection); *Danielson v. City of Brooklyn Park*, 516 N.W.2d 203, 205 (Minn. App. 1995) (tree inspection).

This matter revolves around how and whether the City defendants issued land use permits for certain property. As with licensing and inspection, the permits are intended to protect the interests of the public as a whole, not those of individual landowners. This Court accordingly concludes that the City defendants' conduct is within the public duty doctrine. This supplies an alternative rationale for summary judgment against the negligence claim.

### E. Intentional Infliction of Emotional Distress

To demonstrate intentional infliction of emotional distress, a plaintiff must show that the defendant intentionally engaged in extreme and outrageous conduct, which caused the plaintiff to suffer severe emotional distress. *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003). The City defendants contend that they did not engage in any extreme and outrageous conduct, or in the alternative, that Gary Thelen has not suffered any severe emotional distress.

There is no need to examine the question of conduct, because in the current litigation, the element of emotional distress is dispositive. Where a plaintiff fails to provide medical evidence of severe emotional distress, a claim for intentional infliction of emotional distress will not survive summary judgment. *Langeslag*, 664 N.W.2d at 869; *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 440 (Minn. 1983).

No medical evidence is in the record here, and at his deposition, Gary Thelen admitted he had never sought treatment for his purported emotional distress. (Exh. 2 at 60.) This provides further grounds for summary judgment against the claim for intentional infliction of emotional distress.

## F. Breach of Contract

The sole remaining claim, for breach of contract, is unrelated to the claims involving the property. Some additional background is required here.

After the City was flooded in 2006, Gary Thelen was allegedly approached by the mayor of the City and asked to perform cleanup work. The mayor allegedly told Gary to submit a bill to the City after the work was done, but there is no indication Gary or the mayor agreed on a particular wage. (Exh. 1 at 27; Exh. 2 at 25-27.) At some point thereafter, Gary submitted the City an invoice for fifty-four hours' work, at $100 per hour, for a total of $5,400. The City's copy of the invoice has a notation, apparently from a city official, stating that "[w]e decided to only pay him $40.00 an hour . . . . [$]2160.00." (Exh. 15.)

But this money was not paid to Gary Thelen. Through a writ of execution, the City was advised that Gary had an outstanding civil judgment in the amount of $8,826.66. So the City—after setting off a late water bill—sent the remaining payment to the sheriff, in partial satisfaction of the writ. (Exhs. 16, 17, 18, 19.)

The City defendants argue, in part, that they are not bound by the contract. They cite Minn. Stat. § 412.201, which states that a city cannot execute any contract without obtaining authority from the city counsel and affixing the corporate seal. Where a city does not comply with these formalities, there is no action for breach of contract against the city. *Plymouth Foam Prods., Inc. v. City of Becker*, 944 F.Supp. 781, 785 (D.Minn. 1996). This remains so even where the alleged contract was proposed by a city official with apparent authority. *See City of Geneseo v. Utilities Plus*, 533 F.3d 608, 615 (8th Cir. 2008) (holding that, under Minnesota law, a contractor cannot reasonably rely on the representations of city officials as to their ability to contractually bind the city).

The record here is devoid of any evidence that the City formally executed a contact with Gary Thelen. So in accordance with Minn. Stat. § 412.201, Gary cannot bring action against the City defendants for breach of contract, and summary judgment is appropriate for that claim.

The City defendants alternatively argue that, because Gary Thelen was paid in full for his work, he suffered no damages that would sustain his action for breach of contract. The problem with this argument is that there is no evidence of an agreement, between Gary or anyone else, to be paid a particular amount. In such circumstances, there is no way to determine whether Thelen was paid enough. But there is no need to resolve this issue here, given the preceding conclusion that there was no enforceable contract.

## III. CONCLUSION

Due to an ongoing property dispute, Gary Thelen asserts that the City defendants have violated constitutional guarantees of equal protection, and also advances claims for negligence and intentional infliction of emotional distress.

The City defendants correctly observe that there is not reasonable evidence, in the record, to demonstrate the constitutional violations. For the tort claims, the City defendants qualify for various immunities. Moreover, the claim for negligence fails because the City defendants have no individual duty to Gary; the claim for intentional infliction of emotional distress fails because there is no evidence that Gary suffered severe emotional distress.

There is also a single claim for breach of contract, and because there is no evidence of an enforceable contract here, this claim also fails. So the record as a whole, taken with reasonable inferences in Gary Thelen's favor, does not sustain any of the remaining claims in his complaint. This Court concludes that summary judgment is appropriate for all the remaining claims and that this litigation should be dismissed in its entirety.

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. The defendants' motion to dismiss (Doc. No. 65) be **GRANTED.**

2. All remaining claims in this litigation be dismissed and judgment entered.

Dated this 4th day of March, 2010.            /s    *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **March 19, 2010**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

# APPENDIX

Exh. 1  Compl. [Doc. No. 1].

Exh. 2  Depo. of G. Thelen, Sept. 29, 2009 (Aff. of P. Regnier, Dec. 10, 2009, Exh. 2) [Doc. No. 68].

Exh. 3  Winona County Assessor's Office, Property Record (undated) (Aff. of P. Regnier, Dec. 10, 2009, Exh. 3) [Doc. No. 68]; *see generally* Winona County Assessor's Office, Web Access to Property Records, http://www.qpublic.net/mn/winona.

Exh. 4  Order, *Rico v. Graves*, Nos. C1-98-1246, C7-00-538 (Minn. Dist. Ct. Mar. 5, 2004) (Compl. Exh. E) [Doc. No. 1].

Exh. 5  Depo. of T. Thelen, Sept. 29, 2009 (Aff. of P. Regnier, Dec. 10, 2009, Exh. 1) [Doc. No. 68].

Exh. 6  *Rico v. Graves*, Nos. C1-98-1246, C7-00-538 (Minn. Dist. Ct.) [hereinafter *Rico v. Graves*].

Exh. 7  Compl., *Rico v. Graves* (Nov. 17, 2006) (Compl. Exh. C) [Doc. No. 1].

Exh. 8  Def.'s Mot. for Summary Judgment, *Rico v. Graves* (Jan. 23, 2007) (Compl. Exh. E) [Doc. No. 1].

Exh. 9  Letter of W. Mehrkens, *Rico v. Graves* (Feb. 23, 2007) (Compl. Exh. E) [Doc. No. 1].

Exh. 10  Aff. of R. Prebe, Dec. 28, 2006 (Compl. Exh. D) [Doc. No. 1].

Exh. 11  Aff. of D. Ball, Mar. 8, 2007 (Compl. Exh. F) [Doc. No. 1].

Exh. 12  Proposed Order, *Rico v. Graves* (undated) (Compl. Exh. E) [Doc. No. 1].

Exh. 13  Order, *Rico v. Graves* (Nov. 8, 2007) (Compl. Exh. H) [Doc. No. 1].

Exh. 14  Letter of B. Rico to M. Thelen, July 17, 2007 (Compl. Exh. H) [Doc. No. 1].

Exh. 15  Invoice of Thelen Const. (undated) (Aff. of P. Regnier, Dec. 10, 2009, Exh. 4) [Doc. No. 68].

Exh. 16  Writ, *Rico v. Thelen*, No. 85-cv-06-3995 (Nov. 27, 2007) (Aff. of P. Regnier, Dec. 10, 2009, Exh. 7) [Doc. No. 68] [hereinafter *Rico v. Thelen*].

Exh. 17  Aff. of Serv. of R. Hanson (unsworn), *Rico v. Thelen* (Aff. of P. Regnier, Dec. 10, 2009, Exh. 7) [Doc. No. 68].

Exh. 18    Water Bill, Oct. 1, 2007 (Aff. of P. Regnier, Dec. 10, 2009, Exh. 5) [Doc. No. 68].

Exh. 19    Return on Writ, *Rico v. Thelen*, (Nov. 27, 2007) (Aff. of P. Regnier, Dec. 10, 2009, Exh. 7) [Doc. No. 68].